# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 906 | **DATE** | 3/28/2002 |
| **CASE TITLE** | Arline White Smith vs. Allstate Insurance Corporation, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: The Court grants in part and denies in part Allstate's motions to strike [33-1], [34-1], grants Allstate's motion for summary judgment [24-1] on Smith's federal claims, and dismisses without prejudice Smith's state-law claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices **3**

MAR 29 2002
date docketed

date mailed notice

courtroom deputy's initials

Date/time received in central Clerk's Office

docketing deputy initials

mailing deputy initials

**Document Number**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ARLINE WHITE SMITH,        )
                                       )

    Plaintiff,            )
                                       )

v.                            )     **No. 99 C 0906**
                                       )

**ALLSTATE INSURANCE CORPORATION,**   )     **Magistrate Judge Nan R. Nolan**
**d/b/a ALLSTATE INSURANCE COMPANY;**   )
**SAMUEL TORNABENE, individually and as**  )
**an agent of ALLSTATE INSURANCE**      )
**COMPANY; PAUL HUBER, individually and**  )
**as an agent of ALLSTATE INSURANCE**      )
**COMPANY,**                       )
                                       )

    **Defendants.**          )

## MEMORANDUM OPINION AND ORDER

    Arline White Smith sued her employer Allstate Insurance Company and two Allstate

employees (collectively referred to as "Allstate") alleging that Allstate failed to promote her in

retaliation for her previous reports of unlawful discrimination in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Smith also alleges that Allstate's failure to promote

her constitutes both intentional interference with her contractual rights under 42 U.S.C. § 1981 and

intentional infliction of emotion distress under Illinois law. The parties have consented to the

jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court

are Allstate's Motion for Summary Judgment (Docket Entry #24), Motion to Strike Portions of

Plaintiff's Response to Defendants' Statement of Material Facts (Docket Entry #33), and Motion to

Strike Portions of the Affidavits of Arline White Smith and Portions of Plaintiff's Statement of

Additional Facts (Docket Entry #34). For the following reasons, Allstate's motions to strike are



GRANTED IN PART and DENIED IN PART and Allstate's motion for summary judgment is GRANTED.

## BACKGROUND

Arline Smith, an African American, has worked for Allstate since 1973 and has worked in Allstate's Matteson, Illinois claims office since 1993. (Def.'s Statement of Material Facts ¶1.) This case is the second of four employment discrimination lawsuits Smith has filed against Allstate in the last six years. Because each lawsuit challenges Allstate's promotional decisions, it is necessary to briefly summarize how Allstate determines whether employees are eligible for promotion.

Like many companies, Allstate evaluates the performance of its employees. Allstate evaluates its employees through two distinct processes—annual evaluations and succession planning reports. (*Id.* ¶14.) An annual evaluation rates an employee's performance in his or her assigned position; therefore, a positive evaluation does not indicate that an employee is qualified to assume a higher level of responsibility. (*Id.*) A succession planning report evaluates an employee's potential for promotion. (*Id.* ¶8.) Specifically, the objective of succession planning is to identify and develop individuals for positions of higher responsibility. (*Id.* ¶9.) Pursuant to that process, Allstate designates employees as "Ready Now," "Ready 1-2 years," "Ready 3-5 years," or "Optimally Placed." (*Id.* ¶11.) Optimally placed employees are not considered for promotions. (*Id.* ¶12.) However, an optimally placed employee can move laterally within the company. (*Id.*) In each of Smith's four lawsuits, Allstate has argued, among other things, that it did not promote Smith because she has been designated optimally placed primarily because of an incident that occurred in September 1996. (*Id.* ¶¶15-16.)

In September 1996, Walter Davis, a high-level manager from Allstate's corporate headquarters was reviewing files in a conference room at the Matteson office. (*Id.* ¶17.) While Davis was in the conference room, Smith and some other employees entered the room and had a conversation. (*Id.*) During the conversation, Smith became visibly upset and said "Fuck the company. Fuck Sheryl Thomas. I'm going to end up being a disgruntled postal worker." (*Id.* ¶18.) Davis was appalled by Smith's behavior and considered her "postal worker" comment to indicate a possibility of work-place violence. (*Id.* ¶ 20.) Davis reported the incident to his supervisor and another employee. (*Id.*) Davis's report was relayed to Samuel Tornabene, the manager of the Matteson office. (*Id.* ¶23.) Tornabene investigated the incident. (*Id.*) During his investigation, Tornabene spoke with Smith and the other Allstate employees who were present during Smith's outburst. (*Id.* ¶¶24-25.) The other employees confirmed that Davis's report of the incident was accurate. (*Id.* ¶24.) During her conversation with Tornabene, Smith did not acknowledge that her behavior was improper. (*Id.* ¶26.) She added that if Davis or anyone else did not want to hear what she had to say, they did not have to listen. (*Id.*) Smith also told Tornabene that she disagreed with many of the concepts of Allstate's claim organization and that she did not respect Tornabene's supervisor Sheryl Thomas Bluitt. (*Id.* ¶27.) Tornabene wrote a summary of his conversation with Smith and placed it in Smith's personnel file. (*Id.* ¶28.) Based on the incident in the conference room and his subsequent conversation with Smith, Tornabene believed that Smith lacked the necessary leadership skills to assume a management position at Allstate. (*Id.* ¶40.) Accordingly, in late 1996 or early 1997, Tornabene rated Smith "optimally placed." (*Id.* ¶¶15-16.) Tornabene also rated Smith optimally placed in 1998 and 1999. (*Id.* ¶15.) Allstate regional manager Paul Huber shared Tornabene's view that Smith would not be a good leader. (*Id.* ¶30.)

Smith's First Lawsuit

In October 1996, Smith filed the first of her four lawsuits against Allstate ("*Smith I*"). In *Smith I*, she alleged that Allstate, by failing to promote her on several occasions, discriminated against her on the basis of her race, sex and age and retaliated against her for filing charges of discrimination and that Allstate paid her less than men for the same work. *Smith v. Allstate Ins. Corp.*, 24 F. Supp. 2d 870, 872 (N.D. Ill. 1998).[1] Allstate moved for summary judgment, arguing, among other things, that Smith was not eligible for promotion because she was optimally placed. The *Smith I* court granted the defendant's motion for summary judgment, reasoning that Smith's challenge of one promotion was time barred and that she failed to establish that Allstate's reasons for not promoting her on the other occasions were pretexts for discrimination. *Id.* at 874-78. Regarding the promotions that occurred after the September 1996 incident, the *Smith I* court held that because Smith failed to show that Allstate did not honestly believe Tornabene's report of the September 1996 incident, she failed to demonstrate that Allstate's designation of Smith as optimally placed was a pretext for discrimination. *Id.* at 877-78. In affirming the district court's decision, the Seventh Circuit also held that Smith failed to point to any evidence that Allstate did not honestly believe Tornabene's report of the September 1996 incident. *Smith v. Allstate Ins. Co.*, No. 98-4048, 1999 WL 970264, at *3 (7th Cir. Oct. 20, 1999) (unpublished).

Smith's Second Lawsuit—The Case Currently Before The Court

In February 1998, both Smith and a white employee named Larry Brace occupied positions as Evaluation Consultants ("EC") in the Matteson office. (Def.'s Statement of Material Facts ¶34.)

---

[1] Smith subsequently amended her complaint to include the allegation that Allstate retaliated against her when it failed to promote her on two occasions in September 1997.

Brace, unlike Smith, was not rated optimally placed. (*Id.* ¶42.) At that time, Allstate needed to fill

an open Unit Claim Manager ("UCM") position at the Matteson office. Paul Huber, Allstate's Claim

Service Manager for the Midwest Region, appointed Brace to the vacant UCM post. (*Id.* ¶¶36-37.)

Huber did not consider any optimally placed employees for the UCM position. (*Id.* ¶41.) Because

Allstate defines a promotion as an increase of two salary grades, Brace's move from an EC position

to a UCM position—both of which are salary grade 35 positions—was not a promotion. (*Id.* ¶¶13,

37.) In March 1998—approximately one month after Brace became a UCM—Allstate eliminated

all UCM positions throughout the company and replaced them with a newly created position entitled

Frontline Performance Leader ("FPL"). (*Id.* ¶43.) During this transition, Brace and all other former

UCMs were promoted to FPL positions (a salary grade 37 position). (*Id.*) Smith subsequently filed

this suit ("*Smith II*"), alleging that Allstate, by failing to promote her to the FPL position in March

1998, retaliated against her for her prior complaints of discrimination in violation of Title VII,

intentionally interfered with her contractual rights because of her race in violation of § 1981, and

committed the state-law tort of intention infliction of emotional distress.

Smith's Third Lawsuit

From July to September 1998, Allstate promoted three other individuals to FPL positions.

In response, Smith filed her third federal suit against Allstate ("*Smith III*"). In *Smith III*, Smith

alleged that Allstate, by failing to promote her to an FPL position on the three occasions in the

summer of 1998, retaliated against her for exercising her rights under Title VII, discriminated against

her on the basis of her age, and committed the state-law torts of tortious interference with contractual

rights and intentional infliction of emotion distress. *Smith v. Allstate Ins. Corp.*, No. 99 C 4240,

2001 WL 1104713, at *1 (N.D. Ill. Sept. 18, 2001). The *Smith III* court granted Allstate's motion

for summary judgment. The *Smith III* court, noting that certain issues in *Smith I* had been litigated to a final judgment in the Seventh Circuit, held that Smith was collaterally estopped from challenging the factual issues regarding both the September 1996 incident and Allstate's process of succession planning. *Id.* at *4-6. Regarding her retaliation claim, the *Smith III* court held that Smith failed to establish a prima facie case and, regarding her age discrimination claim, the court held that Smith failed to establish that Allstate did not honestly believe that Smith was ineligible for promotion because she was optimally placed. *Id.* at 11-13.[2]

Smith's Fourth Lawsuit

In August 1999, Allstate transferred Smith from her EC position to a staff claim analyst position. At the same time, Allstate promoted two individuals from EC positions to FPL positions. Smith responded with her fourth lawsuit ("*Smith IV*"), which alleged that Allstate, by transferring her to the staff claim analyst position and by failing to promote her to an FPL position, violated her rights under Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and 42 U.S.C. § 1981. *Smith v. Allstate Ins. Corp.*, No. 00 C 7822, 2001 WL 1000736, at *1 (N.D. Ill. Aug. 29, 2001). The *Smith IV* court granted Allstate's motion for summary judgment. Regarding her transfer to the staff claim analyst position, the *Smith IV* court held that Smith failed to demonstrate that (1) Allstate regarded her as disabled, (2) her transfer was an adverse employment action, and (3) Allstate's reasons for transferring her were pretexts for discrimination. *Id.* at *5, 7-8. Regarding Allstate's failure to promote her to a FPL position, the *Smith IV* court held that Smith failed to establish a prima facie case as to one of the individuals who was promoted instead of herself

---

[2] The *Smith III* court declined to exercise supplemental jurisdiction over Smith's remaining state-law claims. *Smith*, 2001 WL 1104713, at *14.

and failed to demonstrate that Allstate's reasons for promoting the other individual were pretexts for discrimination. *Id.* at *9.

## DISCUSSION

In addition to its summary judgment motion, Allstate moves the Court to strike portions of the following documents: (1) Smith's response to Allstate's statement of material facts; (2) Smith's two affidavits; and (3) Smith's statement of additional facts. Because the rulings on the motions to strike will affect what evidence may be considered for summary judgment purposes, the Court's analysis begins with the motions to strike.

### Defendants' Motions to Strike

A.    Allstate moves the Court to strike the following portions of Smith's affidavits:

1. Paragraph 17 of Smith's 8/4/01 Affidavit

Paragraph 17 states: "I am also aware that Sarah Carter, an adjuster in Lexington, Kentucky committed suicide because of job pressures." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 7 ¶17.) Allstate argues that the affidavit does not provide a foundation for Smith's statement that Carter committed suicide *because of* job pressures. The *Smith IV* court struck the same portion of Smith's affidavit for lack of foundation. *Smith*, 2001 WL 1000736, at *3. This Court agrees that Smith provides no foundation for her statement regarding the reason Carter committed suicide. Accordingly, the Court strikes paragraph 17 of Smith's 8/4/01 affidavit.

2. Paragraph 6 of Smith's 11/17/00 Affidavit

> Paragraph 6 states:

> I was present at the deposition of Al Zvinakis, the former manager of the Matteson office where I heard Zvinakis testify that when he recommended Larry Brace for a promotion to Casualty Claim Manager in 1994, he was advised that Brace was not promotable. I also heard William Rathe, the Human Resources Department manager in Illinois, testify at a deposition that Brace was not promotable which would have rendered Larry Brace optimally placed.

(Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶6.) Allstate argues that Smith's recitation of another person's deposition testimony is inadmissible hearsay and that this information is irrelevant because the only promotion at issue in this case is the 1998 promotion. Smith argues that this paragraph constitutes an exception to the hearsay rule because the statements Smith heard were made under oath during depositions and Allstate's counsel had the opportunity to examine the deponents at those depositions. The *Smith III* court held that Rathe's statement was admissible as an admission of a party opponent and also reasoned that the same would apply to Zvinakis's statement if he were employed by Allstate at the time of his deposition. *Smith*, 2001 WL 11104713, at *7. Allstate does not contend that it did not employ Zvinakis at the time of his deposition. Therefore, Allstate has failed to establish that this portion of Smith's affidavit is inadmissible hearsay. Accordingly, the Court denies Allstate's motion to strike paragraph 6 of Smith's 11/17/00 affidavit.

3. Paragraph 9 of Smith's 11/17/00 Affidavit

> Paragraph 9 states:

> I am aware that Collette Thomas was promoted to the position of Casualty Claim Manager (now Front Line Performance Expert (FPE)) in the Lombard office from the position of Unit Claim Manager in Matteson in July, 1997. I am also aware that Collette Thomas was rated as "at potential in claims" prior to her promotion in July,

1997. I am also aware that Ms. Thomas returned to the Matteson office in early 1999 as a Front Line Performance Leader (FPL).

(Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶9.) Allstate argues that Smith's affidavit does not provide a foundation for these statements—specifically, Allstate contends that the affidavit does not explain how Smith has personal knowledge of another employee's performance ratings or Smith's understanding of what constitutes a promotion for another employee. The *Smith III* court struck this paragraph for lack of foundation. *Smith*, 2001 WL 1104713, at *7. This Court agrees. Because Smith's affidavit fails to explain how she has personal knowledge of Thomas's performance rating, the Court strikes paragraph 9 of Smith's 11/17/00 affidavit.

4. Paragraph 10 of Smith's 11/17/00 Affidavit

Paragraph 10 states: "When I became an Evaluation Consultant, I was advised that the position was a key position which was integral to the success of the new CCPR program. I became a pioneer in this field." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶10.) Allstate argues that the first sentence is inadmissible hearsay from an unidentified person and that the second sentence is an irrelevant, self-serving conclusion. Smith argues that paragraph 10 is based on her personal knowledge of the facts surrounding her appointment to the position of Evaluation Consultant and that, based on those facts, she may properly conclude that she was a pioneer at the time. The *Smith III* court reasoned that the first sentence was not hearsay—because it could be fairly inferred that Smith was informed of this fact by her supervisor—and that the second sentence was self-serving and irrelevant. *Smith*, 2001 WL 1104713, at *7. This Court agrees. Accordingly, the Court strikes only the second sentence of paragraph 10 of Smith's 11/17/00 affidavit.

5. Paragraph 14 of Smith's 11/17/00 Affidavit

Paragraph 14 states: "As a result of voicing these concerns about Colossus, I was branded as being resistant to change." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶14.) Allstate argues that Smith's affidavit does not provide a proper foundation for this statement because it fails to identify who allegedly "branded" Smith "resistant to change." Smith responds that her statement is based on her "personal involvement in the events described in the statement." (Pl.'s Resp. to Defs.' Mot. to Strike, p. 3.) The *Smith III* court struck this paragraph because it simply assumes that Smith was "branded" as a result of voicing concerns. *Smith*, 2001 WL 1104713, at *7. This Court agrees. Accordingly, the Court strikes paragraph 14 of Smith's 11/17/00 affidavit.

6. Paragraph 20 of Smith's 11/17/00 Affidavit

Paragraph 20 states:

I heard Sam Tornabene testify at his deposition in this matter that the incident Allstate is referring to took place in September of 1996. In fact, I never cursed upper level management or anyone else at that time or at any other time. Also, I never cursed any Allstate processes at that time or at any other time.

(Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶20.) Allstate argues that the first sentence is inadmissible hearsay and that the remainder must be stricken pursuant to the doctrine of collateral estoppel. Smith responds that the first sentence is an exception to the hearsay rule and that defendants' collateral estoppel argument is unsupported by case law. In *Smith I*, the Seventh Circuit affirmed the district court's grant of summary judgment for the defendants. *Smith*, 1999 WL 970264 (unpublished). In that case, the Seventh Circuit determined that the fact that Allstate believed Tornabene's report of the September 1996 incident was undisputed. *Id.* at *3. In

*Smith III*, the district court concluded that because the previous case had been litigated to a final judgment in the Seventh Circuit, Smith was collaterally estopped from challenging factual determinations resolved in the previous case. *Smith*, 2001 WL 1104713, at *5. Specifically, the *Smith III* court held that Smith was precluded from arguing that the September 1996 incident did not take place. *Id.* at *8. This Court agrees. Accordingly, the Court strikes the second and third sentence of paragraph 20.[3]

7. Paragraph 22 of Smith's 11/17/00 Affidavit

Paragraph 22 states:

> I did not make a negative comment to Joyce Maddox at any time. I was present at a meeting at the Matteson Holiday Inn in 1997. Joyce Mattox [sic] attempted to make a comment in the meeting, and Collette Thomas and Shari Coles began to make fun of Ms. Mattox [sic] and laughed at her. Sam Tornabene, who was present, never intervened. Later Ms. Mattox [sic] told me that this practice occurred often at meetings, and that Sam Tornabene never did anything to stop it.

(Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶22.) Allstate argues that all of the statements in this paragraph are irrelevant and that the last sentence constitutes inadmissible hearsay. Smith responds that the statements are relevant because defendants assert that Tornabene did not consider Smith for the promotion at issue because he felt she was "unable to embrace change, serve as a role model and help people through change." The *Smith III* court struck only the last sentence of the paragraph. *Smith*, 2001 WL 1104713, at *8. Although it is not entirely clear how the rest of the paragraph is relevant to whether the Smith was "[]able to embrace change," this Court strikes only the last sentence of paragraph 22 of Smith's 11/17/00 affidavit.

---

[3] The Court strikes paragraph 21 of Smith's 11/17/00 affidavit for the same reason.

8. Paragraphs 23, 24, and 26 of Smith's 11/17/00 Affidavit

Paragraph 23 states: "I am aware that Joyce Maddox was demoted from the position of Front Line Performance Leader to the position of Staff Claim Analyst in November, 1999." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶23.) Paragraph 24 states: "I am also aware that Shari Coles was demoted from Administrative Claim Manager to Claim Representative. She was replaced as Administrative Claim Manager by Barbara LaBanco." (*Id.* ¶24.) Paragraph 26 states: "I am also aware that prior to her assignment to the position of FPL in Joliet, Carmen Buckles held a management position in Human Resources at Allstate." (*Id.* ¶26.) Allstate argues that Smith's affidavit does not provide a proper foundation for these statements and that the statements are irrelevant. Smith responds that all of these statements are based on her "personal knowledge." The *Smith III* court struck all three paragraphs for lack of foundation. *Smith*, 2001 WL 1104713, at *8. This Court agrees. Accordingly, the Court strikes paragraphs 23, 24, and 26 of Smith's 11/17/00 affidavit.

9. Paragraph 28 of Smith's 11/17/00 Affidavit

Paragraph 28 states:

> Tornabene never told me that he was rating me optimally placed because I was resistant to change. I am aware that Larry Brace, who did not attend the mandatory Evaluation Consultant Workshop, and who resists using company-mandated Alternative Dispute Resolution, has not been accused by Tornabene of being resistant to change.

(Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶28.) Allstate argues that Smith's affidavit does not provide a proper foundation for the second sentence—specifically, Allstate contends that the affidavit fails to identify how Smith knows the following: (1) that Brace did not attend a certain workshop; (2) that he "resists" using alternative dispute resolution; or (3) that

Tornabene has not accused Brace of being resistant to change. Smith responds that the statement is based on her personal knowledge that she gained through working in the same office with Brace. The *Smith III* court struck only the portion of the paragraph stating that "[Brace] has not been accused by Tornabene of being resistant to change." *Smith*, 2001 WL 1104713, at *8. This Court agrees that Smith's affidavit does not provide an adequate foundation for that statement. Accordingly, the Court strikes only that portion of paragraph 24 of Smith's 11/17/00 affidavit that states: "[Brace] has not been accused by Tornabene of being resistant to change."

B.       Allstate also moves the Court to strike the following portions of Smith's Statement of Additional Facts:

1. Additional Fact #24

    Additional fact #24 states:

    Smith and Brace were the first Evaluation Consultants in the Matteson office. According to Huber, they were pioneers. The company scheduled mandatory Evaluation Consultant Skills Workshops through 1997 to train the new Evaluation Consultants. The workshop was mandatory because the Evaluation Consultant position was critical to the success of Allstate's casualty division. Participation in mandatory training is not optional. Huber Dep. 1 at 204-06, 239-40; Chester Dep. at 64; Ex 16[.]

(Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶24.) Allstate argues that Smith's citations do not support the statement that the Evaluation Consultant Skills Workshops were scheduled through 1997. Smith refers to both her November 2000 affidavit—which states that the workshops were offered at least ten times through 1997, (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts, Ex. 9 ¶15)—and defendants' material fact #36—which states that Brace did not attend a workshop in 1997 due to a scheduling conflict and that he planned to attend the workshop in 1998, (Defs.' Statement of

-13-

Material Facts ¶36). Because these parts of the record support Smith's additional fact #24, the Court denies Allstate's motion to the extent it seeks an order striking Smith's additional fact #24.

2. Additional Fact #31

Additional fact #31 states: "Smith has never refused to accept a new process. John Valaitis, who supervised the Evaluation Consultants beginning in 1996, recommended that Smith be aligned [sic] to the Unrep'd segment because she was more flexible than Larry Brace. Brace Dep. at 105; Valaitis Dep. 2 at 57[.]" (Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶31.) The Court concludes that Smith's citations do not support her statement that she never refused to accept a new process. The cited portion of Brace's deposition establishes only that, in Brace's opinion, Smith has never refused to accept a new process. (Brace Dep., p. 105.) The cited portion of Valaitis's deposition does not address the issue. Because Smith's citations do not establish that she *never* refused to accept a new process, the Court strikes the first sentence of Smith's additional fact #31.

3. Additional Fact #33

Additional fact #33 states:

> Huber has never had a negative interaction with Smith, and Jay Puccinelli, the Claim Process Specialist, is not aware of any instance where Smith refused to accept a new process, nor has Puccinelli ever known Smith to refuse to comply with training requirements. Puccinelli Dep. 2 at 30; Huber Dep. 1 at 184-87[.]

(Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶33.) Allstate argues that Smith's citations do not support her assertions that Huber never had negative interaction with Smith or that Puccinelli is not aware of any instance where Smith to refused to accept new process. Smith admits that there is no direct support for these statements in

the record. Nevertheless, Smith argues that she is entitled to infer these "facts" because the record

is silent on whether Huber had a negative interaction with Smith or whether Puccinelli was aware

of an instance where Smith refused to accept new process. This argument is meritless. A party's

statement of facts contains <u>facts</u> which are supported by the record. Puccinelli testified only that he

was not aware of any instance when Smith refused to comply with training requirements. (Puccinelli

Dep. #2, p. 30.) During his deposition, Huber did not testify that he never had a negative interaction

with Smith. (Huber Dep. #1, pp. 184-87.) Accordingly, the Court strikes all of Smith's additional

fact #33 except for the following: "Puccinelli [has n]ever known Smith to refuse to comply with

training requirements."

4. Additional Fact #34

Additional fact #34 states:

> However, Smith expressed her concern that the new Colossus system launched in
> 1995 incorporated lower settlement values for the same injury in the Matteson office
> than was the case for the Arlington Heights office, although both offices are in Cook
> County. Colossus settlement values for the same injury are supposed to be the same
> within the same county. Brace remembers Smith expressing her concerns about the
> disparity in Colossus settlement values. Puccinelli Dep. 1 at 124; Brace Dep. at 67-
> 73; Valaitis Dep. at 77-78[.]

(Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of

Summ. J. ¶34.) Allstate argues that Smith's citations do not support the statement that the Colossus

program was launched in 1995. This Court concludes that paragraphs 1 and 11 of Smith's

November 2000 affidavit support the disputed statement. Accordingly, the Court denies defendants'

motion to the extent it seeks an order striking any portion of Smith's additional fact #34.

5. Additional Fact #45

Additional fact #45 states: "Tornabene has never completed a succession planning document which contains any detail as to why Smith is not eligible for promotion. Ex. 10, 11[.]" (Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶45.) Allstate argues that Smith's citations do not support the statement that Tornabene has *never* completed such a document. Although Smith admits that there is no direct evidence supporting this statement, she argues that she is entitled to infer this fact because defendants did not produce a detailed succession planning document authored by Tornabene. To establish that there are no detailed succession planning documents authored by Tornabene, Smith must show that she requested such documents and that none were produced. However, Smith did not provide this Court with a copy of her document requests. The only materials cited by Smith are two succession planning documents that, without explanation, rate Smith "optimally placed." These documents do not identify the author. Because Smith's citations do not support additional fact #45, the Court strikes Smith's additional fact #45.

6. Additional Fact #50

Additional fact #50 states:

On the other hand, Huber testified that he does not recall if he concluded that Brace was better at direct management of people than Smith, and that the decision to move Brace was based on all the objective and subjective evaluations and succession planning that Allstate would have done with Brace and Smith. Huber Dep. 1 at 328[.]

(Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶50.) Allstate argues that Smith's citations do not support additional fact #50. Additional fact #50 cites to page 328 of Huber's first deposition. However, Smith did not provide the Court

with that portion of Huber's first deposition. The Court notes that page 329 of that deposition—the page provided by Smith that is closest to the missing page—does not support Smith's additional fact #50. Accordingly, the Court strikes Smith's additional fact #50.

7. Additional Fact #54

Additional fact #54 states: "Buckles was considered for the position of District Claim Manager, which is equivalent to the current Market Claim Manager position. She never got that position. Buckles Dep. at 12; 15[.]" (Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶54.) The parties dispute whether Smith's citations provide a foundation for the statement that Buckles was considered for the District Claim Manager position. The cited portion of Buckles's deposition establishes only that the person who performed Buckles's 1983 succession planning review rated Buckles ready for promotion to District Claim Manager in two years. (Buckles Dep., p. 12.) Specifically, Buckles testified that she saw her succession planning document for the year 1983 and that that document stated she was scheduled to be promoted to a District Claim manager in two years. (*Id.*) Buckles's deposition testimony does not establish that a District Claim manager position became available and that she was considered for that position. Accordingly, this Court strikes Smith's additional fact #54.

8. Additional Fact #66

Additional fact #66 states: "Buckles was moved from an FPL position to Band C and transferred from the Bolingbrook office to the Merrillville office. The decision to redeploy Buckles was made by Patrick Fitzpatrick and Huber. Huber Dep. 2 at 34[.]" (Pl.'s Rule 56.1(b)(3)(B)

-17-

Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶66.) Allstate

withdrew its objection to additional fact #66. Accordingly, the Court does not need to rule on this

issue.

9. Additional Fact #68

Additional fact #68 states:

Buckles, who was transferred from Bolingbrook to Merrillville, Indiana, now reports
to Amanda Urban, who is approximately 24 and has been an Unrep'd FPL since
April, 2001. Buckles does not believe that Urban is qualified for her position. Urban
is not a minority. Four other employees in the Merrillville office, three of whom are
minorities, were more qualified for the position than Urban. Buckles Dep. at 75-77[.]

(Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of

Summ. J. ¶68.) Allstate argues that Smith's citations do not support the statement that Urban is

approximately twenty-four years old. Smith responds that the cited references establish that Urban

has been with Allstate for only three years. However, Smith's citations do not indicate Urban's age

when she started with Allstate. Accordingly, the Court strikes from Smith's additional fact #68 any

reference to Urban's age.

10. Additional Fact #69

Additional fact #69 states:

Smith has been told by Tornabene that she has no leadership skills. Telling Smith
that she had lost her leadership skills was part of a pattern which also affected other
managers, including Carmen Buckles, Ray Whitehead, and Joyce Mattox [sic], all of
whom were redeployed from management positions to non-management positions.
Smith Dep. at 18; 52[.]

(Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of

Summ. J. ¶69.) In the portions of her deposition referenced in additional fact #69, Smith testified

that "other managers" told her that Allstate told them that they lost their leadership skills. Because

these statements are hearsay—Smith offers these statements to prove that Allstate told these other managers that they lost their leadership skills—they are inadmissible in a summary judgment proceeding. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Accordingly, this Court strikes the second sentence of Smith's additional fact #69.

C.      Defendants move this Court to strike the following portions of Smith's Response to Defendants' Statement of Material Facts:

1. Material Fact #5

Defendants' material fact #5 states: "The duties of an EC include evaluating the dollar value of bodily injury claims as submitted by claim representatives and authorizing settlement amounts. Huber Dep. pp. 207-208[.]" (Defs.' Statement of Material Facts ¶5.) Smith's response states: "Deny. The cited reference does not support this statement. Huber's testimony as cited says nothing about authorizing settlement amounts. Huber Dep. 1 at 208; Huber Dep. 2 at 64; Brace Dep. at 18; Ex. 7, 15[.]" (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶5.) Allstate argues that Smith's citations do not support her denial. At Huber's deposition, Smith's counsel asked Huber whether ECs have settlement authority or whether they make recommendations. (Huber Dep. #2, p. 64.) Huber testified that "[he] believe[s] they make recommendations." (*Id.*) Because the Court concludes that Smith's denial is supported by the record, the Court denies this portion of Allstate's motion to strike.

2. Material Fact #6

Defendants' material fact #6 states: "In 1998, each job title at Allstate was classified into salary grades that reflected the ranking of the job within the company. Huber Dep. pp. 41-43[.]" (Defs.' Statement of Material Facts ¶6.) Smith's response states: "Deny. The cited reference does

not support this statement. Huber's testimony as cited says nothing about job titles being classified into salary grades in 1998." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶6.) Smith is correct that Allstate's citations do not support the defendants' statement that the salary grade reclassification occurred in 1998. Accordingly, the Court denies Allstate's motion to the extent it seeks an order striking Smith's response to defendants' material fact #6.

3. Material Fact #7

Defendants' material fact #7 states: "In 1998, an EC position was a salary grade 35. Tornabene Dep. #2, p. 64[.]" (Defs.' Statement of Material Facts ¶7.) Smith's response states: "Deny. This statement is not supported by the record as cited by Defendants and must be disregarded." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶7.) At his second deposition, Tornabene testified that the EC position was always grade 35. (Tornabene Dep. #2, p. 64.) Accordingly, the Court treats Smith's response to defendants' material fact #7 as an admission. *See Smith*, 2001 WL 1000736, at *8 n.2.

4. Material Fact #12

Defendants' material fact #12 states: "If an employee is optimally placed, he or she will not be considered for promotion. However, an optimally placed employee could be moved laterally. Huber Dep. p. 36; Tornabene Dep. #2, pp. 275-276[.]" (Defs.' Statement of Material Facts ¶12.) Smith's response states: "Deny that an optimally placed employee will not be considered for a promotion. Huber Dep. 1 at 36; 78; Tornabene Dep. 1 at 263-264; Ex. 9. At ¶8[.] The cited reference does not support the statement that an optimally placed employee could be moved laterally and must be disregarded." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶12.) In her additional fact #43, Smith states that "an optimally placed employee is not considered

for promotion, but an optimally placed employee can be transferred laterally." (Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶43.) Moreover, even making all reasonable inferences in her favor, Smith's citations do not support her denial. At most, Smith's citations suggest that an employee can still be promoted even though she had been designated as optimally placed at some point in the past (i.e., that an "optimally placed" rating can change). Accordingly, the Court treats Smith's response to defendants' material fact #12 as an admission.

5. Material Fact #13

Defendants' material fact #13 states: "In 1998, a promotion was a two salary grade increase. A movement by plaintiff from the EC position, a salary grade 35, to the FPL position, a salary grade 37, would have been a promotion for her. Huber Dep. p. 30, 332[.]" (Defs.' Statement of Material Facts ¶13.) Smith's response states: "Deny. The cited reference does not support the statement in that it does not address the 1998 time frame, nor does it refer to salary grades 35 and 37 or what constitutes a promotion for Smith. Therefore, it must be disregarded." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶13.) Smith's additional fact #42 states that a promotion is a two-step increase in salary grade, (Pl.'s Rule 56.1(b)(3)(B) Statement of Additional Material Disputed Facts Requiring Denial of Summ. J. ¶42), and her amended complaint states that the EC position is salary grade 35 and the FPL position is salary grade 37, (Pl.'s Am. Compl. ¶¶13, 17). Accordingly, the Court treats Smith's response to defendants' material fact #13 as an admission.

6. Material Fact #14

Defendants' material fact #14 states: "The fact that an employee does well in their [sic] assigned position, does not mean that the employee would be a good or even a fair manager or leader

-21-

of people. The annual evaluation process and the succession planning process are two independent evaluations. Tornabene Dep. #2, p. 244[.]" (Defs.' Statement of Material Facts ¶14.) Smith's response states:

> Deny. This statement is not supported by the record as cited by Defendants and must be disregarded. Huber Dep. 1 at 134, 137 and Ex. 1-4 and 19 show that career advancement is part of every performance appraisal. Further, Ex. 10-11 show that demonstrated abilities (i.e., performance) are clearly considered in the succession planning process.

(Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶14.) The *Smith III* court reasoned that because the Seventh Circuit had determined in *Smith I* that it was undisputed that the annual evaluation review and the succession planning review are two distinct processes, Smith was collaterally estopped from denying that fact in subsequent litigation. *Smith*, 2001 WL 1104713, at *6. This Court agrees. Accordingly, the Court treats Smith's response to defendants' material fact #14 as an admission.

7. Material Fact #15

Defendants' material fact #15 states: "In the latter part of 1996 or the first part of 1997, Tornabene rated plaintiff optimally placed. He also rated her optimally placed in 1998 and 1999. Tornabene Dep. #2, pp. 175, 216-217[.]" (Defs.' Statement of Material Facts ¶15.) Smith's response states: "Deny. This statement is not supported by the record as cited by Defendants and must be disregarded. Additionally, Smith's designation of optimally placed was updated August 26, 1996. Ex. 13; Huber Dep. 1 at 97, 104-05; 329[.]" (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶15) (emphasis in original). The cited portions of Tornabene's deposition contain all of the information conveyed in material fact #15. Smith's citations do not dispute Tornabene's assertions that he rated Smith optimally placed in late 1996 or early 1997, 1998

and 1999. Because Allstate's citations support material fact #15 and Smith's citations do not support her denial, the Court treats Smith's response to defendants' material fact #15 as an admission.

8. Material Fact #16

Defendants' material fact #16 states: "A significant reason for plaintiff's optimally placed rating was an incident that occurred in a small conference room in the Matteson claim office in 1996. Tornabene Dep. #2, pp. 175-182[.]" (Defs.' Statement of Material Facts ¶16.) Smith's response states: "Deny. Ex. 13; Huber [D]ep. at 97, 329; Ex. 9 at ¶¶ 19-21; Tornabene Dep. 1 at 179-182[.]" (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶16.) The *Smith III* court concluded that Smith was collaterally estopped from denying that she was optimally placed based on Tornabene's investigation of the September 1996 incident. *Smith*, 2001 WL 1104713, at *5. Moreover, Smith's citations do not dispute that Tornabene rated Smith as optimally placed primarily because of the September 1996 incident. Accordingly, the Court treats Smith's response to defendants' material fact #16 as an admission.

9. Material Facts ##17-22

Defendants' material facts ##17-22 contain Allstate manager Walter Davis's version of the September 1996 incident. (Defs.' Statement of Material Facts ¶¶ 17-22.) Smith responds to material facts ##17-22 as follows: "Deny. There is no competent source for this information in that it relies on the affidavit of a Walt Davis, who has never been identified among the individuals having knowledge of any fact in this case. Ex. 21: Defendants' Answers to Plaintiff's Written Interrogatories at ¶ 1[.]" (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶¶ 17-22.) The *Smith III* court held that Smith was collaterally estopped from disputing that the September 1996 incident occurred. *Smith*, 2001 WL 1104713, at *5. Davis's affidavit contains the

same facts as the Seventh Circuit's decision. Also, Smith fails to establish that Allstate had a duty to identify Davis. One of Smith's interrogatories asked the defendants to identify individuals with knowledge of facts surrounding Smith's allegations, defendants' denials, and all other information contained in defendants' answer to complaint. The defendants did not refer to September 1996 incident in their answer and Smith did not refer to the incident in her complaint. The interrogatory does not ask for the name of any individual with knowledge of anything related to the case. Accordingly, the Court treats Smith's responses to defendants' material facts ##17-22 as admissions.

10. Material Facts ##23-28, and 40

Defendants' material facts ##23-28, and 40 contain Tornabene's version of his investigation of the September 1996 incident. (Defs.' Statement of Material Facts ¶¶ 23-28, 40.) Smith responds that the testimony cited in material facts ##23-28 and 40 appears in a deposition which is not part of the record in this case. (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶¶ 23-28, 40.) The defendants acknowledge that the cited deposition was not taken in this case (i.e., *Smith II*). Nevertheless, Allstate argues that it can use the cited deposition under Federal Rule of Civil Procedure 32(a)(4) because it was taken in a case that involved the same parties and the same subject matter. Moreover, the defendants contend that, to save time and money, the parties agreed to use depositions taken in Smith's other cases against Allstate. Without citing any legal authority, Smith contends that Rule 32(a)(4) does not apply because this case has two defendants—Huber and Tornabene—that were not named as defendants in previous case. The Court concludes that the parties agreed to use prior depositions, (Defs.' Mot. to Strike Pl.'s Resp. to Defs.' Statement of Material Facts, Exs. 1-3), and, even if the parties did not reach such an agreement, that the

-24-

defendants can use the prior depositions under Rule 32(a)(4). Accordingly, the Court treats Smith's responses to defendants' material facts ##23-28, and 40 as admissions.

11. Material Fact #29

Defendants' material fact #29 states: "An additional reason why Tornabene rated plaintiff optimally placed was his perception that plaintiff was resistant to the many changes that Allstate had instituted. Tornabene Dep. #2, pp. 184-185." (Defs.' Statement of Material Facts ¶29.) Smith's response states: "Deny. Tornabene Dep. 1 at 234-238, Ex. 9 at ¶ 22; Ex. 10-11, 13[.]" (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶29.) The cited portions of Tornabene's deposition contain all of the information conveyed in material fact #29. Smith's citations do not dispute Tornabene's assertion that an additional reason he rated Smith optimally placed was his perception that she was resistant to change. Accordingly, the Court treats Smith's response to defendants' material fact #29 as an admission.

12. Material Fact #30

Defendants' material fact #30 states:

Beginning in 1995, there were many changes in how the Allstate claims operation worked. Tornabene and Huber felt that a leader's role was to embrace the change, serve as a role model and help people through the change. Tornabene and Huber felt that plaintiff was unable to do this. Tornabene Dep. #2, p. 184 Huber Dep. p. 170[.]

(Defs.' Statement of Material Facts ¶30.) Smith's response states:

Deny. Ex. 9: Smith Aff. At ¶¶1, 2, 7, 10, 13; Tornabene Dep. 1 at 184-185; 225-229; Huber Dep. 1 at 182; 184-85; 197; 207; 232; 370[.] Answering further, the record reveals that Smith was chosen by Allstate for what the company regarded as a pioneering position when she became one of the very first Evaluation Consultants, a position Allstate itself regarded as key to the success of the new claims process. See above references to record.

(Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶30.) Smith's citations do not support her denial. Accordingly, the Court treats Smith's response to defendants' material fact #30 as an admission.

13. Material Fact #35

Defendants' material fact #35 states: "Brace performed well as an EC. His production numbers were good and his judgment was respected by his peers. Tornabene Dep. #2 p. 78 Valaitis Dep. p. 39[.]" (Defs.' Statement of Material Facts ¶35.) Smith's response states: "Deny that his production numbers were good. Ex. 20. The cited references do not support the statement that he was respected by his peers." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶35.) Valaitis testified at his deposition that Brace's production numbers were good and that he respected him. (Valaitis Dep., p. 39.) Smith is correct, however, that Exhibit 20—a 1996 evaluation of Brace's performance as an Evaluation Consultant—mentions a backlog and that the cited references do not support defendants' statement the Valaitis was Brace's peer. Accordingly, this Court denies defendants' motion to the extent it seeks an order striking Smith's response to defendants' material fact # 35.

14. Material Fact #36

Defendants' material fact #36 states:

Brace was unable to attend an EC workshop in 1997 due to a scheduling conflict. Brace planned to attend the workshop in 1998, but before he could, he accepted a position as a Unit Claim Manager ("UCM") in the Matteson claim office. The EC workshop was not relevant for a UCM. Tornabene Dep. #2, pp. 207-209; Brace Dep. pp. 84-85[.]

(Defs.' Statement of Material Facts ¶36.) Smith's response states:

> Deny. The cited testimony does not support these statements. Brace did not testify about any scheduling "conflict," nor did he testify that he planned to attend the workshop in 1998, nor did he testify that he was named a Unit Claim Manager before he could do so. Further, the record does not support the statement that the workshops were offered in 1998. In fact, the record shows that Tornabene knew the workshops were offered in 1996 and up to June 30, 1997 and that he directed Brace to go before June 30 1997. Ex. 16[.]

(Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶36.) The Court concludes that the defendants' citations support material fact #36. Accordingly, the Court treats Smith's response to defendants' material fact #36 as an admission.

15. Material Fact #39

Defendants' material fact #39 states: "Tornabene believed that Brace was a good leader of people. Brace demonstrated his leadership skills through his willingness to embrace change and his ability to walk fellow employees through change. Tornabene believe that Brace has achieved good results with his leadership skills. Tornabene Dep. #2, pp. 244-245[.]" (Defs.' Statement of Material Facts ¶39.) Smith's response states: "Deny. Ex. 19, Tornabene Dep. 1 at 151-152; 157-158; Smith Dep. at 158; Brace Dep. at 88-89; 93-95; 105; Valaitis Dep. at 57[.]" (Pl.'s Rule 56.1(B)(3)(a) Resp. to Defs.' Statement of Material Facts ¶39.) The parties dispute whether Smith's citations support her denial. Exhibit 19 is Tornabene's February 2000 performance evaluation of Brace as a FPL—the position to which Brace was promoted. Referring to his leadership skills as a FPL, Tornabene wrote that Brace needed to improve in certain areas. But the fact that Brace needed to improve his leadership skills to meet the level expected of a FPL does not mean that Tornabene did not believe that Brace was a good leader of people. Moreover, Tornabene's undisputed deposition testimony explains that the "requires improvement" mark on Brace's February 2000 performance evaluation was a "common fated goal" meaning that it reflected the leadership skills of all the managers in the

office, not Brace individually. (Tornabene Dep. #1, pp. 151-52.) The portions of the Brace and Valaitis depositions cited by Smith do not support her denial. Accordingly, the Court treats Smith's response to defendants' material fact #39 as an admission.

16. Material Facts ##41-42

Defendants' material fact #41 states: "Plaintiff also was not considered for the UCM position because she was rated optimally placed at the time. Huber did not consider any employee for the UCM position who was optimally placed. Huber Dep. p. 364[.]" (Defs.' Statement of Material Facts ¶41.) Defendants' material fact #42 states: "Brace was not rated optimally placed when he moved from an EC to a UCM. Huber Dep. pp. 189-191[.]" (Defs.' Statement of Material Facts ¶42.) Smith responds to both of these facts as follows: "Deny. The record indicates that Brace was optimally placed from December 1987 until he was given the job of UCM in February 1998. Pl. 56.1(B)3(b) Statement at ¶¶ 2-15 and supporting documentation." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶¶41-42.) Smith citations do not support her contention that Brace was optimally placed. These citations establish only that, from 1987 to 1998, several persons were promoted to MCM positions at various Allstate offices and that nobody discussed those job openings with Brace. These citations do not establish that Brace was optimally placed from 1987 to 1998. Moreover, the deposition testimony of Brace and Huber provide explanations why Brace was not considered for promotion on several of the occasions raised by Smith. Brace testified that he informed Allstate management that he was not willing to move out of the Chicago area, (Brace Dep., pp. 11-12), and Huber testified that he did not consider Brace for several of the MCM positions because of mobility concerns, (e.g., Huber Dep., pp. 151). Additionally, the fact that somebody did not speak directly to Brace about a job opening does not mean that Allstate did not consider Brace

for that opening. Finally, even assuming that Brace was not considered for an opening does not mean that he was optimally placed. Allstate designates employees as "Ready Now," "Ready 1-2 years," "Ready 3-5 years," or "Optimally Placed." Therefore, an employee may not be considered for a promotion because he or she is not yet ready for a promotion. The record does not support an inference that all such employees are optimally placed. Accordingly, this Court treats Smith's responses to defendants' material facts ##41-42 as admissions.

17. Material Fact #43

Defendants' material fact #43 states: "On March 1, 1998, Brace became an FPL when the UCM position was eliminated throughout Allstate and all UCM's became FPL's. The FPL position was a salary grade 37. Huber Dep. p. 66 Tornabene Dep. #2, p. 69[.]" (Defs.' Statement of Material Facts ¶43.) Smith's response states: "Deny. The cited references do not support the statement that Brace became an FPL on March 1, 1998 when the UCM position was eliminated." (Pl.'s Rule 56.1(b)(3)(A) Resp. to Defs.' Statement of Material Facts ¶43.) Huber's affidavit establishes that "[e]ffective March 1, 1998, the position of Unit Claim Manager was eliminated through Allstate and all the Unit Claim Managers became Frontline Performance Leaders ("FPL")." (Defs.' Statement of Material Facts, Ex. 11 ¶3.) Additionally, defendants' material fact #44—a fact Smith admits—establishes that Brace was a UCM until the position was converted into a FPL position. Accordingly, the Court treats Smith's response to defendants' material fact #43 as an admission.

**Allstate's Motion for Summary Judgment**

Smith alleges that Allstate, by failing to promote her to an FPL position in March 1998, retaliated against her for her previous reports of unlawful discrimination in violation Title VII, intentionally interfered with her contractual rights based on her race in violation of § 1981, and

committed the state-tort of intentional infliction of emotion distress. Allstate moves for summary

judgment on all three claims.

Summary Judgment Standard

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

if any, show that there is no genuine issue as to any material fact and the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harbours Pointe of Nashotah, LLC v. Village

of Nashotah*, 278 F.3d 701, 704 (7th Cir. 2002). A genuine issue of material fact exists for trial

when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to

the non-moving party, a reasonable jury could return a verdict for the non-moving party. *Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party opposing a properly supported motion

for summary judgment may not rest upon mere allegations or denials of his pleading, but must set

forth specific facts showing there is a genuine issue for trial." *Id.* at 256.

A. Retaliation under Title VII

In *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640 (7th Cir. 2002), the

Seventh Circuit recently clarified the two methods for analyzing retaliation claims in the summary

judgment context. Under the first method, the plaintiff presents "direct evidence . . . that he engaged

in protected activity (filing a charge of discrimination) and as a result suffered the adverse

employment action of which he complains." *Id.* at 644. Under the direct-evidence method, the

"mere temporal proximity between the filing of the charge of discrimination and the action alleged

to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a

triable issue." *Id.* (collecting cases). The second method is the familiar burden-shifting framework

first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case, the plaintiff must demonstrate that "after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Stone*, 281 F.3d at 644. For prima facie case purposes, it is no longer necessary for a plaintiff in a retaliation case to establish a "causal link" between the protected expression in which the plaintiff engaged and the adverse employment action of which he is complaining. *Id.* at 643-44. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* at 644. If the plaintiff fails to establish that the defendant's proffered reasons are pretexts for discrimination, the defendant is entitled to summary judgment. *Id.*

Because the parties filed their briefs prior to the Seventh Circuit's decision in *Stone*, the parties' arguments incorrectly include a causal-link element as a part of the plaintiff's prima facie case. As the *Stone* court explained, however, evidence of a causal link between the plaintiff's protected expression and the adverse employment action is direct evidence of retaliation. *Id.* at 643. Accordingly, the Court will analyze the parties' causal-link arguments under the direct evidence method and the parties' other arguments under the *McDonnell Douglas* framework.

Direct Evidence

The only direct evidence of retaliation offered by Smith is the temporal link between her previous complaints of discrimination (her protected expression) and the adverse employment action. Specifically, Smith contends that a factfinder could reasonably infer that Allstate's failure to promote her was unlawful retaliation because at the time of the challenged promotional decision, the parties

-31-

were still litigating *Smith I*—which was not fully resolved until the Seventh Circuit's October 1999 decision. Smith improperly includes the entire duration of her prior litigation as a continuing period of "protected activity." Protected activity for purposes of a retaliation claim is the initial charge of discrimination, not the entire period until the final resolution of the discrimination claim. *Smith*, 2001 WL 1104713, at *12 (holding that two-year period from start to completion of prior lawsuit is not an open time period of "protected activity"). Smith filed her charges of discrimination in *Smith I* in 1996 and subsequently amended her complaint to include allegations that Allstate retaliated against her when it failed to promote her on two occasions in September 1997. Allstate promoted Brace in March 1998. The Court concludes that a factfinder could not reasonably conclude that Allstate's failure to promote Smith in 1998 was unlawful retaliation based solely on the fact that Smith filed charges of discrimination against Allstate in 1996 and September 1997. *See Stone*, 281 F.3d at 644; *Smith*, 2001 WL 1104713, at *12. Accordingly, the Court concludes that Smith fails to present direct evidence sufficient to preclude Allstate's motion for summary judgment.

Indirect Evidence

Under the *McDonnell Douglas* burden-shifting approach, Smith has the initial burden of establishing her prima facie case. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002). Once she has substantiated her prima facie case, the burden shifts to Allstate to articulate a legitimate non-discriminatory reason for failing to promote Smith. *Id.* Once Allstate has proffered such a reason, Smith must then produce sufficient evidence from which a factfinder could reasonably conclude that Allstate's reason is a pretext for discrimination. *Id.*

## 1. Prima Facie Case

To establish a prima facie case, Smith must show that (1) she engaged in a statutorily protected activity, (2) she was qualified for a promotion to an FPL position, (3) she was not promoted, and (4) a similarly situated individual who did not complain of discrimination was promoted. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001); *see also Stone*, 281 F.3d at 644. Conceding that Smith can establish the first and third prongs of her prima facie case, Allstate argues that it is entitled to summary judgment based on Smith's failure to present any evidence establishing that she was qualified for promotion to an FPL position or that she was similarly situated to Brace—the employee who was promoted instead of herself.

It is undisputed that in March 1998, Allstate eliminated the UCM position throughout the company, replaced it with the FPL position, and promoted all former UCMs to FPLs. (Def.'s Statement of Material Facts ¶43.) Therefore, Allstate reasons, in order to have been promoted to an FPL position in March 1998, an employee must have been a UCM. Because it is undisputed that Smith was not a UCM in March 1998, Allstate argues that Smith cannot establish that she was qualified for the promotion to the FPL position. Smith initially responds that she was qualified for the FPL promotion because she held the position of UCM in 1994 and 1995. Even assuming the truth of this assertion, it does not raise a disputed issue of fact regarding whether Smith was a UCM in March 1998, the relevant time period for this lawsuit. Smith next argues that Allstate's qualification argument is disingenuous because Allstate knew that it was going to replace the UCM position with the FPL position when it transferred Brace to the UCM position. Huber testified at his deposition that he was aware that the UCM position would be converted to a FPL position before he appointed Brace to the UCM position. (Huber Dep. #1, pp. 262-63.) The record also confirms

that Huber transferred Brace to the UCM position only one moth prior to the UCM-to-FPL conversion. Therefore, Smith argues, because Allstate effectively promoted Brace to the FPL position when it transferred him the UCM position, the UCM position was not a prerequisite to the promotion. Based on Huber's deposition testimony and the one-month delay between Brace's transfer and his FPL promotion, a reasonable factfinder could conclude that Brace was effectively promoted to a FPL position when Huber appointed him to the vacant UCM position. Thus, the Court concludes that Smith has raised a factual dispute as to whether holding a UCM position was a necessary prerequisite for a promotion to an FPL position in March 1998.

Allstate next argues that Smith was not qualified for the promotion to the FPL position because she was optimally placed. It is undisputed that (1) Smith was optimally placed in March 1998, (2) Brace was not optimally placed in March 1998, (3) optimally placed employees are not eligible for promotions, and (4) Huber did not consider any optimally placed employees for the vacant UCM position. (Def.'s Statement of Material Facts ¶¶ 12, 15, 41-42.)[4] Smith contends that the fact she was optimally placed would not have precluded Allstate from transferring her to the FPL position. Retreating from her previous position that Brace's transfer to the UCM position was a promotion, Smith now argues that Allstate could have transferred her to the UCM position instead of Brace because such a transfer would have been a lateral move. Smith assumes that after the transfer she would have been promoted to the FPL position when all of the other UCMs were promoted. There are two problems with this argument. First, because Smith's charge of

---

[4] Smith attempts to argues that an optimally placed employee is eligible for promotion. In support, however, she relies on her assertion that Brace was optimally placed in March 1998. Because the Court has already concluded that the record does not support Smith's contention that Brace was optimally placed at that time, (*supra*, pp. 28-29), the Court rejects Smith's argument that an optimally placed employee is eligible for promotion.

discrimination does not address Brace's transfer to the vacant UCM position, that employment

decision is not properly before the Court. *Lesch v. Crown Cork & Seal Co.*, __ F.3d __, No. 00-

4239, 2002 WL 288330, at *3 (7th Cir. Feb. 28, 2002). Second, even if the Court were to address

Smith's argument that her optimally-placed designation would not have barred Allstate from laterally

transferring her to the vacant UCM slot, this argument does not address Allstate's position that Smith

could not have been promoted to the FPL position because she was optimally placed. Based on the

undisputed fact that Smith was optimally placed in March 1998, the Court concludes that Smith fails

to establish that she was qualified for a promotion to the FPL position. Because a litigant's "failure

to establish any element of the prima facie case proves fatal to the employee's retaliation claim,"

*Hilt-Dyson v. City of Chicago*, __ F.3d __, No. 01-2095, 2002 WL 272774, at *7 (7th Cir. Feb. 27,

2002), the Court concludes that Allstate is entitled to summary judgment based on Smith's failure

to establish each element of her prima facie case.[5]

## 2. Pretext

Assuming that Smith could establish a prima facie case, the burden would shift to Allstate

to articulate a legitimate non-discriminatory reason for not promoting Smith. Allstate asserts that

---

[5] Regarding the similarly-situated prong of the prima facie case, Allstate argues that Brace and Smith were not similarly situated in March 1998 because (1) Brace had worked at Allstate four years longer than Smith, (2) Brace had held positions of greater responsibility than Smith, (3) Brace had never received a disciplinary write-up, and (4) Brace had never been designated optimally placed. Smith does not respond to this argument. To meet her burden of demonstrating that she was similarly situated to Brace, Smith must show that she and Brace were directly comparable in all material respects, including whether they had the same experience, education and qualifications, provided that Allstate took these factors into account when it promoted Brace. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). Allstate submitted evidence that when it promoted Brace it considered the fact that Brace was not optimally placed and that he was a good leader. (Defs.' Statement of Material Facts ¶¶ 38, 29, 41, 42.) Because it is undisputed that Smith was optimally placed in March 1998, the Court concludes that Smith fails to establish that she was similarly situated to Brace.

it promoted Brace because he is a strong, positive leader. In contrast, both Tornabene and Huber believe that Smith would not be a good leader. Allstate's low opinion of Smith's leadership skills is based primarily on her behavior during the September 1996 incident—specifically, it is based on her lack of respect for Allstate managers and processes. To establish that Allstate's stated reason is a pretext for discrimination, Smith must "present sufficient evidence that the proffered reason[] for the [adverse employment action] had no basis in fact, that [it] did not actually motivate [Allstate's] decision, or that [it was] insufficient to motivate the decision." *Lesch*, 2002 WL 288330, at *4. Significantly, Smith does not address the September 1996 incident in her response to Allstate's motion for summary judgment. Because Smith fails to establish that Allstate did not honestly believe that her behavior during the September 1996 incident indicates that she lacks the skills necessary to assume a management position, the Court concludes that Smith fails to demonstrate that Allstate's proffered reason for promoting Brace is a pretext for discrimination. *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998) (plaintiff must address all the reasons suggested by the defendant to show pretext). For the sake of completeness, the Court will address Smith's pretext arguments.

Instead of addressing the September 1996 incident, Smith attempts to cast doubt on whether Allstate honestly believed that Brace was a strong and positive leader. All of Smith's arguments lack merit. For example, Smith contends that Brace's failure to attend a mandatory EC workshop and that his unwillingness to employ Alternative Dispute Resolution ("ADR") indicate that Allstate's stated reason for promoting Brace is pretextual. Smith does not explain how these facts cast doubt on whether Allstate honestly believed that Brace is a better leader than Smith. It is undisputed that the EC workshop was not relevant to the UCM position. (Defs.' Statement of Material Facts ¶36.)

Also, Smith fails to point to any evidence suggesting that Allstate required its employees to use ADR or that Allstate believed that an employee's failure to regularly employ ADR indicates that he would not be a good manager. Smith also argues that Allstate's 1996 decision to assign her rather than Brace to work with the "Unrepresented Segment" indicates that Allstate did not honestly believe that Brace was a better leader. At his deposition, John Valaitis—the Allstate manager responsible for assigning Smith to the "Unrepresented Segment"—testified that he chose Smith because he believed that she was "more flexible than Mr. Brace." (Valaitis Dep., p. 57.) When asked to explain what he meant by "more flexible," Valaitis testified that Brace, unlike Smith, insisted that "every 'T' be crossed and every 'I' be dotted and every stone be turned in the investigation of a claim," and that such a complete investigation is not necessary in the "Unrepresented Segment." (*Id.*) Smith does not explain how her habit of being less thorough than Brace establishes that she is a better leader than Brace. Far from demonstrating pretext, Valaitis's deposition testimony seems to support Allstate's decision to promote Brace. Accordingly, the Court concludes that these facts do not establish pretext.

Smith next argues that performance evaluations from both before and after Brace's March 1998 promotion demonstrate that Allstate did not honestly believe that Brace was a better leader than Smith. Specifically, Smith points to the following facts: (1) Brace received a poor performance review in 1987 when he was a manager in a different office; (2) Tornabene rated Brace as "requires improvement" in the area of leadership in February 2000—twenty-three months after Brace was promoted to the FPL position; (3) two performance evaluations, one from 1995 and one from 1996, comment that Brace could be more productive; and (4) Smith received a positive evaluation from Valaitis in 1996. The Court concludes that these facts do not indicate that Allstate's proffered reason

-37-

for promoting Brace was a pretext for discrimination. The relevant time period for this case is March 1998, when Allstate promoted Brace to the FPL position. Therefore, the evaluations referenced by Smith, all of which are years removed from the March 1998 decision to promote Brace, do not establish pretext. *See Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (noting that performance evaluations years prior to the relevant time period are of limited utility in assessing an employee's performance at time of adverse employment action); *see also Peele v. Country Mutual Ins. Co.*, No. 99 C 0638, 2001 WL 849745, at *5 (N.D. Ill. July 27, 2001). Also, three of the evaluations were not completed by either Huber or Tornabene, the decision makers in this case, *Rojas v. Florida*, __ F.3d __, No. 01-11070, 2002 WL 448490, at *3 (11th Cir. Mar. 22, 2002) (per curiam) (holding that evaluations by different supervisors do not establish pretext because "[d]ifferent supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important"), and the one evaluation completed by Tornabene assessed Brace's leadership skills in the FPL position nearly two years after he had been promoted. Regarding the FPL evaluation, Tornabene testified that the "requires improvement" comment reflected the overall leadership of the office's management staff, not Brace's individual leadership skills. (*Supra*, pp. 27-28.) The Court also notes that the 1987 evaluation and Tornabene's FPL evaluation rated Brace's performance at management-level positions that Smith never occupied. Accordingly, the Court concludes that a factfinder could not reasonably conclude that these performance evaluations establish that Allstate did not honestly believe that Brace was a better leader than Smith.

Finally, Smith argues that a reasonable factfinder could conclude that Allstate's proffered reason is pretext because another Allstate employee—Carmen Buckles—testified that she believes

that Allstate retaliated against her for her prior complaints of discrimination. Buckles's speculation that Allstate retaliated against her does not establish that Allstate's proffered reason for promoting Brace is a pretext for discrimination. *See Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997) (no inference of pretext from employer's alleged past discriminatory treatment where plaintiff offered only conclusory assertions of past discrimination). Also, Smith makes no effort to tie the allegedly discriminatory treatment suffered by Buckles to the same decision makers who allegedly discriminated against her. Accordingly, the Court concludes that Smith's reliance on Buckles's conclusions about past discrimination do not establish that Allstate's proffered reason for promoting Brace was a pretext for discrimination.

Based on the foregoing, the Court concludes that Smith fails to establish that Allstate's proffered reason for promoting Brace is a pretext for discrimination. Accordingly, the Court concludes that Allstate is entitled to summary judgment on Smith's retaliation claim.

B. Intentional Interference with Contract under 42 U.S.C. § 1981

Section 1981 claims and Title VII claims are analyzed under the same *McDonnell Douglas* framework. *Smith*, 2001 WL 1000736, at * 9 (collecting cases). Smith's § 1981 claim is based on the same incident as her retaliation claim. For the reasons stated above, the Court concludes that Allstate is entitled to summary judgment on Smith's § 1981 claim.

C. State-Law Claim: Intentional Infliction of Emotion Distress

In *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994), the Seventh Circuit stated that "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." Accordingly, the Court dismisses Smith's state-law claim without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Allstate's

motions to strike, GRANTS Allstate's motion for summary judgment on Smith's federal claims, and

DISMISSES WITHOUT PREJUDICE Smith's state-law claim.

**E N T E R:**

*Nan R. Nolan*

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: MAR 2 8 2002